UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VICTOR M. SCROGGINS,

        Petitioner,

vs.                       Case No. 2:06-cv-120-FtM-29DNF

JAMES MCDONOUGH and ATTORNEY GENERAL
OF THE STATE OF FLORIDA,

        Respondents.

_____

**OPINION AND ORDER**

**I.**

Petitioner, Victor Scroggins, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1, Petition) pursuant to 28 U.S.C. § 2254 and supporting memorandum of law (Doc. #2, Petition) on March 6, 2006.[1] Petitioner challenges his state court judgment of conviction of escape entered in the Twentieth Judicial Circuit Court, Collier County, Florida. Petition at 1. Respondent filed a Response (Doc. #14, Response) and supporting exhibits (Exhs. 1-41)(not scanned), including Petitioner's post-conviction motions and hearing transcripts. Petitioner filed a Reply (Doc. #19, Reply) and an exhibit (Doc. #19-2, Exh. A) consisting of an affidavit from defense counsel. This matter is ripe for review.

---

[1]The Petition (Doc. #1) was docketed and filed with the Court on March 9, 2006; however, the Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." <u>Alexander v. Sec'y Dep't of Corr.</u>, 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

## II.  History

Petitioner was charged by information of escape from jail in violation of Florida Statute § 944.40 on January 7, 2000.[2]  Exh. 1. On April 3, 2000, Petitioner, through defense counsel, filed a pre-trial motion requesting that the trial court permit Petitioner to represent himself with the assistance of counsel.  Exh. 2.  After the trial court held a hearing on the motion, the motion was granted.  Exh. 3.  After a one-day jury trial commencing on April 28, 2000, Petitioner was found guilty as charged.  Exh. 6; Exh. 7 at 2.   In accordance with the verdict, the judge sentenced Petitioner as a violent career criminal to thirty years in prison, the sentence running consecutive to his prior sentence.  Exh. 7 at 10.

Petitioner, through post-conviction counsel, filed a Notice of Appeal on May 22, 2000.  On direct appeal Petitioner raised two issues: (1) is a new trial required because the trial court failed to conduct a proper inquiry before permitting Scroggins to represent himself; and (2) is a new trial required because the trial court improperly limited jury selection, refusing to permit questions to the jury regarding the burden of proof, presumption of innocence, or the standard of reasonable doubt.  Exh. 9.  The State filed a brief in response.  Exh. 10.  On December 7, 2001, the

---

[2]At the time of Scroggins' escape, he had been sentenced to forty years in prison for a conviction of burglary.

appellate court *per curiam* affirmed the decision of the trial court.  Exh. 11.

On November 18, 2002, Petitioner filed a motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850 raising two issues: (1) trial counsel rendered ineffective assistance by not raising the defense of insanity and for misadvising Petitioner that insanity was not a defense to the charge; (2) trial counsel rendered ineffective assistance by not objecting to the requirement that Petitioner wear a stun belt during trial.  Exh. 12 (motion); Exh. 13 (memorandum of law).  On December 11, 2002, the trial court summarily denied Petitioner's motion.  Exh. 14.

On February 13, 2003, Petitioner appealed the trial court's order.  Exh. 15.  Petitioner argued that the trial court erred by summarily denying the Rule 3.850 motion without a hearing.  Exh. 16.  On April 16, 2003, the appellate court *per curiam* affirmed the trial court's decision.  Exh. 17.  Petitioner then filed a motion for rehearing in the appellate court, which was denied on May 14, 2003.  Exhs. 18-19.

On August 11, 2003, Petitioner filed a post-conviction motion pursuant to Fla. R. Crim. P. 3.800(a) raising one ground: trial court erred in sentencing Petitioner as a violent career criminal because he lacked the requisite prior felony convictions.  Exh. 22. The trial court directed the State to file a brief in response. Exh. 23.  The State filed a response brief.  Exh. 24.  Petitioner

filed a brief in reply.  Exh. 25.  On November 22, 2003, the trial court entered an order denying Petitioner's Rule 3.800 motion. Exh. 26.

On December 22, 2003, Petitioner filed a notice of appeal. Exh. 27.  Petitioner raised two grounds for relief on appeal: (1) the trial court erred by summarily denying Scroggins' *pro se* Rule 3.800(a) motion; and (2) Scroggins is entitled to be re-sentenced because judicial notice taken of prior proceedings is insufficient evidence to support enhancement under the provisions of § 775.084(1)(C).  Exh. 28.  On July 28, 2004, the appellate court *per curiam* affirmed the decision of the trial court.  Exh. 30. Petitioner filed a motion for rehearing, which was denied.  Exhs. 31-32.

On April 25, 2005, Petitioner filed a "motion to correct sentence" with the trial court, arguing that judicial notice of a prior proceeding was insufficient evidence to support his sentence as a violent career criminal.  Exh. 35.

On July 5, 2005, Petitioner filed another appellate brief. Exh. 37.  The appellate court entered an order affirming the trial court's order.[3]  Exh. 38.  Petitioner sought rehearing, which was also denied.  Exh. 40.

---

[3]The appellate court cited <u>Macaluso v. State</u>, 912 So. 2d 694 (Fla. 2d DCA 2005); <u>Judge v. State</u>, 596 So. 2d 73, 77 (Fla. 2d DCA 1992)(en banc).

Petitioner raises six grounds for relief in the federal Petition *sub judice*:

1) Trial court erred by failing to conduct proper <u>Faretta</u>[4] inquiry before allowing Petitioner to waive his right to counsel and invoke his right to self-representation at trial;

2) Trial court erred by denying Petitioner the opportunity to question the jurors during voir dire regarding burden of proof, presumption of innocence, and reasonable doubt;

3) Trial court erred by forcing the Petitioner to wear a stun belt during trial without first holding a hearing;

4) "Co-counsel" was ineffective for failing to object to the trial court's failure to hold an evidentiary hearing before requiring Petitioner to wear a stun belt at trial;

5) Counsel was ineffective during pretrial representation for failing to identify and present a defense based upon insanity and for misadvising Petitioner that insanity was not a valid defense to the charge of escape;

6) Trial court erred by sentencing Petitioner as a violent career criminal without making the required mandatory statutory findings and for enhancing his sentence beyond the statutory maximum for prior burglaries that are not by statutory definition crimes of violence.

<u>See</u> <u>generally</u> Petition at 5-30.

### III. Applicable § 2254 Law

Petitioner filed his timely[5] Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty

---

[4]<u>Faretta v. California</u>, 422 U.S. 806 (1975).

[5]The AEDPA imposes a one-year statute of limitations on § 2254 actions. 28 U.S.C. § 2244(d). Respondent concedes that the Petition was timely filed. <u>See</u> Response at 4.

Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996).

Consequently, post-AEDPA law governs this action. Abdul-Kabir v.

Quarterman, 127 S. Ct. 1654, 1664 (2007); Penry v. Johnson, 532

U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9

(11th Cir. 2007). Under AEDPA, the standard of review "is 'greatly

circumscribed and highly deferential to the state courts.'

Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart

v. Sec'y Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007). See

also Parker v. Sec'y Dep't of Corr., 331 F.3d 764 (11th Cir. 2003).

AEDPA altered the federal court's role in reviewing state prisoner

applications in order to "prevent federal habeas 'retrials' and to

ensure that state-court convictions are given effect to the extent

possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

## A. Deference to State Court Decision

A federal court must afford a high level of deference to the

state court's decision. See, e.g., Ferguson v. Culliver, 527 F.3d

1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with

respect to a claim adjudicated on the merits in state court unless

the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or

> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  Ferguson, 527 F.3d at 1146; Wright v. Sec'y Dep't of Corr., 278 F.3d 1245, 1253-54 (11th Cir. 2002).  See also Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision.  Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). In cases where nothing in the Supreme Court's jurisprudence addresses the issue on point or the precedent is ambiguous and gives no clear answer to the question, it cannot be said that the state court's conclusion is contrary to, or constitutes an unreasonable application of, "clearly established Federal law."  Wright v. Van Patten, 128 S. Ct. 743, 747 (2008); Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003).

A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially

indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result. Brown, 544 U.S. at 141; Mitchell, 540 U.S. at 15-16. Further, it is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them." Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown, 544 U.S. at 134; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), cert. denied, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18. Depending upon the legal principle at issue, there can be a range of reasonable applications. Yarborough v. Alvarado, 541 U.S. 652, 663-64 (2004). Thus, the state court's decision is not subject to federal review de novo; rather, §

2254(d)(1) relief is only available upon a showing that the state court decision meets the "objectively unreasonable" standard. <u>Id.</u> at 665-66.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Where the credibility of a witness is at issue, relief may only be granted if it was unreasonable, in light of the evidence presented, for the state court to credit the testimony of the witness in question. <u>Rice v. Collins</u>, 546 U.S. 333, 338 (2006). Additionally, a factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240 (2005); <u>Henderson</u>, 353 F.3d at 890-91. This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." <u>Parker v. Head</u>, 244 F.3d 831, 836 (11th Cir.), <u>cert. denied</u>, 534 U.S. 1046 (2001) (citation omitted). An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed <em>de novo</em>. <u>Rolling v. Crosby</u>, 438 F.3d 1296, 1299 (11th Cir.), <u>cert. denied sub nom. Rolling v. McDonough</u>, 126 S. Ct. 2943 (2006).

Finally, if the state court fails or declines to rule on the merits of a particular claim raised before it, that claim falls

outside of the scope of § 2254(d)(1)'s restrictions and the reviewing federal habeas court owes no deference to the state court decision when evaluating that claim. Davis v. Sec'y Dep't of Corr., 341 F.3d 1310, 1313 (11th Cir. 2003).

**B. Exhaustion and Procedural Default**

If the grounds asserted warrant review by a federal court under § 2254, petitioner must still have given the State courts the opportunity to address the federal issues. A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A). This imposes a total exhaustion requirement in which all the issues must have first been presented to the state courts. Rhines v. Weber, 544 U.S. 269, 274 (2005).

AEDPA requires a state prisoner exhaust all available state court remedies, either on direct appeal or in a state post-conviction proceeding, thereby giving the state the opportunity to correct its alleged violations of federal rights. See Baldwin v. Reese, 541 U.S. 27, 29 (2004). The exhaustion doctrine requires that the petitioner "fairly present" his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right. Duncan v. Henry, 513 U.S. 364, 365-366 (1995)(quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). Petitioner must present the same claim to the state court that he argues to the federal court. McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005); Kelley v. Sec'y Dep't of Corr., 377

F.3d 1317, 1343-1344 (11th Cir. 2004).  As to ineffective assistance of counsel claims, a petitioner must have presented each instance of alleged ineffective assistance to the state court in such a manner that a reasonable reader would understand each claim's particular legal basis and specific factual foundation. Ogle, 488 F.3d at 1368; Kelley, 377 F.3d at 1344.

A district court is ordinarily required to dismiss a "mixed" petition, i.e., one containing both unexhausted and exhausted claims.  Pliler v. Ford, 542 U.S. 225 (2004); Rose v. Lundy, 455 U.S. 509 (1982).  However, when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural rule, a district court can consider the petition but treat those claims as procedurally defaulted.  Ogle v. Johnson, 488 F.3d 1364, 1370 (11th Cir. 2007).  Additionally, while under the AEDPA a federal court may not grant a habeas petition which contains unexhausted claims, it may deny such a petition.  LeCroy v. Sec'y Dep't of Corr., 421 F.3d 1237, 1261 n.26 (11th Cir. 2005).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."  Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001), cert. denied, 534 US. 1136 (2002).  Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, . . .."  Smith, 256 F.3d at 1138.

A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. House v. Bell, 547 U.S. 518, 537 (2006); Mize v. Hall, 532 F.3d 1184 (11th Cir. 2008). "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003). Constitutionally ineffective assistance of counsel can constitute cause if that claim is not itself procedurally defaulted. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). To show "prejudice," petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. Henderson, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. House, 547 U.S. at 536; Edwards, 529 U.S. at 451; Henderson, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." Henderson, 353 F.3d at 892. See also House, 547 U.S. at 536-37 (prisoner asserting actual innocence must establish that,

in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt).

## C. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. Newland, 527 F.3d at 1184. In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688. Petitioner bears a heavy

burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006), cert. denied sub nom. Jones v. Allen, 127 S. Ct. 619 (2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. Id. A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. An attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.), cert. denied sub nom. Ladd v. Burton, 493 U.S. 842 (1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

As previously stated, if a petitioner fails to raise his federal habeas claims properly in the state court, then the petitioner is barred from pursing the same claim in federal court

absent an exception to overcome the procedural bar, including a showing of cause for and actual prejudice from the procedural default. <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302 (11th Cir. 1999). Generally, a procedural default can occur in two ways. First, the federal court is required to respect the state court's decision where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the claim is procedurally defaulted. <u>Id.</u> Second, "if the petitioner simply never raised the claim in state court, and its obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court." <u>Id.</u> at 1303 (internal citations omitted). If claims were presented to the state court, then the Court asks "whether the last state court rendering judgment clearly and expressly stated that its judgment rested on a procedural bar, i.e., an adequate and independent state ground." <u>Id.</u> (citing <u>Harris v. Reed</u>, 489 U.S. 255, 263 (1989)). If the claims were not presented to the state court, and the second instance applies, then the Court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. <u>Id.</u>

## IV. Analysis

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 127 S.

Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. Schriro, 127 S. Ct. at 1940; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

**Ground One**

Petitioner argues that the trial court committed an error by not conducting the proper Faretta inquiry before allowing Petitioner to waive his right to counsel. Petition at 5. Specifically, Petitioner faults the trial court for allegedly not advising him of the disadvantages of waiving his right to the assistance of counsel during the trial. Id. at 10.

In Response, Respondents first argue that the claim is now procedurally barred because neither Petitioner, nor counsel who was assisting Petitioner, objected at trial to the court's order granting Petitioner's motion to represent himself, thereby constituting waiver. Response at 7. Respondent further notes that Petitioner did not "unequivocally ask to represent himself," instead Petitioner "piggy-backed his request with a proviso that his appointed counsel could also assist him." Id. As such, Respondent argues, Petitioner waived the right of self-representation and waived any Faretta-based claim. Id. at 7-8

(citing Raulerson v. Wainwright, 732 F.2d 803, 809 (11th Cir. 1984) (stating a defendant's election to act as co-counsel may waive any earlier asserted rights to self-representation), cert. denied, 469 U.S. 966 (1984); Moore v. State, 778 So. 2d 1054, 1057 (Fla. 4th DCA 2001)(deeming waived defendant's objections to denial of motion to discharge counsel where he did not renew his motion to discharge in the intervening six months before trial, and/or at any time before trial ended); Kott v. State, 518 So. 2d 957 (Fla. 1st DCA 1988)(finding the defendant proceeded to trial without counsel and made no additional attempt to dismiss or request self-representation)). Turning to the merits of Petitioner's claim, nonetheless, Respondents argue that the trial court reasonably applied Faretta. Response at 11-16. In Reply, Petitioner reiterates that the trial court's Faretta inquiry was "wholly inadequate." Reply at 3.

Petitioner, through counsel, raised this issue on direct appeal. As noted above, the appellate court *per curiam* affirmed the decision of the trial court.

In Faretta, the United States Supreme Court held:

> [A]lthough a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

422 U.S. at 835.  The purpose of a <u>Faretta</u> hearing is to determine whether a defendant's decision to represent himself is voluntary and intelligent.  <u>See</u> <u>generally</u> <u>id.</u>  The Eleventh Circuit Court of Appeals "has interpreted the Supreme Court's language to mean that ideally a trial court should hold a hearing to advise a criminal defendant on the dangers of proceeding *pro se* and make an explicit finding that he has chosen to represent himself with adequate knowledge of the possible consequences." <u>Fitzpatrick</u>, 800 F.2d at 1065.  The failure to do so, however, is not error as a matter of law.  If the trial record shows that a defendant knowingly and voluntarily elected to represent himself, the <u>Faretta</u> standard will be satisfied.  <u>Nelson v. Alabama</u>, 292 F.3d 1291, 1296 (11th Cir. 2002); <u>Fitzpatrick v. Wainwright</u>, 800 F.2d 1057, 1064 (11th Cir. 1986)(stating "while [a] waiver hearing expressly addressing the disadvantages of a *pro se* defense is much to be preferred, it is not absolutely necessary.  The ultimate test is not the trial court's express advice, but rather the defendant's understanding.").  Further, the Eleventh Circuit Court of Appeals "has held repeatedly that an individual does not have a right to hybrid representation. . . . . Rather, the decision to permit a defendant to proceed as co-counsel rests in the sound discretion of the trial court." <u>Cross v. U.S.</u>, 893 F.2d 1287, 1291-92 (11th Cir. 1990)(citations omitted).

In this case, Petitioner filed a motion to represent himself. The trial court record evidences the following colloquy that took place during the hearing on Petitioner's pretrial motion:

MR. GROGOZA:[defense counsel] I had represented Mr. Scroggins. He was the first client I ever had, so I've been doing the case pro bono to help him out. As we were discussing this case with him -- we had several discussions. I think his case is Number 4 set for trial. It appears under these circumstances, Mr. Scroggins would be able to represent himself. I've gone over with him -- I would sit second chair and help him during the trial, but I've gone over with him the issues of voir dire, opening statement and also the rules of evidence and everything, and I believe, frankly, Your Honor, Mr. Scroggins is intelligent enough that he knows what he's doing, and I think that with some assistance, he could, under these circumstances, put on a better case than I could.

THE COURT: But with some assistance? You're talking about your assistance?

MR. GROGOZA: Yes, your Honor. I would be willing to sit second chair.

THE COURT: Because the Court cannot give him that kind of assistance.

MR. GROGOZA: I've explained that to Mr. Scroggins, Your Honor.

THE COURT: State have anything to say?

MR. SCUDERI: I don't have anything to say. I'm sure Mr. Grogoza is aware of the penalties he's facing. I think that even maybe with the assistance of Mr. Grogoza, there may need to be a Farretta inquiry.

All right. Stand in front of the Court, Mr. Scroggins, and raise your hand and be sworn.

Thereupon, VICTOR SCROGGINS, the Defendant herein, having been first duly sworn, was examined and testified as follows:

THE COURT: Mr. Scroggins, what is the extent of your

education?

THE DEFENDANT: I have two years in college, a GED. Two years in college.

THE COURT: All right. You obviously read, speak and write the English language?

THE DEFENDANT: Oh, yes, I do.

THE COURT: And have you had other experience in the past in the courts and in the legal system?

THE DEFENDANT: Yes, sir. I have spent time in the Fort Myers prison reading law books, studying, filing motions, various other things.

THE COURT: All right. You yourself have had how many different cases involved in the legal system?

THE DEFENDANT: Myself?

THE COURT: Yes.

THE DEFENDANT: I can't give you an accurate amount. Twenty.

THE COURT: Twenty in?

THE DEFENDANT: Well, not 20 separate arrests. You know, if you get charged one time, you get six charges and you plead on the one, you still have six convictions.

THE COURT: Have you had any civil experience in civil courts; divorces anything of that sort?

THE DEFENDANT: I acted as my own lawyer concerning a pro se motion. I have lawsuits in the Collier County Sheriff's Office in federal court right now in Fort Myers.

THE COURT: You're representing yourself in that matter?

THE DEFENDANT: Yes, sir.

THE COURT: Tell me anything else about your life experiences that you think enables you to do a credible job of representing yourself in this case.

THE DEFENDANT: This case? Well, Your Honor, I already have 40 years, and I'm facing 40 more. The state is not -- is pushing for me to go to trial on this escape case instead of offering me some kind of plea. I don't see justice there, but I figure if I'm looking at 80 years, I feel like I can do a good job of representing myself and presenting my case and what I believed in for my actions on that morning.

THE COURT: All right. Anything the state wants to inquire within the scope of this?

MR. SCUDERI: No, Judge. But he was offered a plea of 30 years.

MR. GROGOZA: That's right.

THE COURT: Okay. Well, I'm going to find that you make a credible argument for self-representation with the assistance of Mr. Grogoza. Now, I'm going to tell you, too, that I won't cut you any slack because you're not a lawyer. I expect you to be just as consistent and qualified and capable in what you undertake to do in this trial as a lawyer. You will also be required to follow all the normal and routine requirements of the Court. And let me give you a few specific examples: I have a rule that only one lawyer examines or cross-examines a witnesses. That means if you and Mr. Grogoza decide that Mr. Grogoza is going to cross one of the state's witness and it later occurs to you that you want to ask that witness some questions, you cannot do it directly. You have to submit those questions to Mr. Grogoza.

THE DEFENDANT: Yes, sir.

THE COURT: Similarly, anyone that you examine or cross cannot later be examined or crossed by Mr. Grogoza. Do you understand that?

THE DEFENDANT: Yes, sir, I do.

THE COURT: The same rule applies to arguments. If Mr. Grogoza starts an argument on an evidentiary issue or even in the final argument phase of the case, he has to carry that whole argument. You can't jump in and add your part to it. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: And the same rule applies to him; if you start an argument, you're going to be required to finish it. You can't stop and say, I turn it over to Mr. Grogoza. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: All right. That will be the ruling of the Court, then. You may be co-counsel with Mr. Grogoza in your own defense.

THE DEFENDANT: Thank you.

MR. GROGOZA: Thank you, Your Honor.

Exh. 3. Additionally, immediately proceeding commencement of the trial, the trial court held the following colloquy:

THE COURT: All right. Mr. Scroggins, this being a critical phase of your trial, we need to do the Faretta inquiry that we did the other day based on your wish to act as your own counsel.

Raise your right hand, face the clerk and be sworn.

Thereupon, VICTOR SCROGGINS, having been first duly sworn, was examined and testified as follows:

THE COURT: All right. Do you have anything to add or delete from what you told me the other day from when we discussed you representing yourself?

MR. SCROGGINS: No, Your Honor. Other than I have a 10th-grade education with a GED, two years' community college. Nothing that I can think of, Your Honor.

THE COURT: All right. Well, you have a constitutional right to act as your own lawyer. And before you do that, I just need to make sure that you are cognizant of your rights and your physical and mental abilities as of this date to stand on that decision.

Are you under the influence of any drugs or intoxicants of any kind?

MR. SCROGGINS: No, sir.

THE COURT: All right. You read, speak and write the
English language?

MR. SCROGGINS: Yes, I do, Your Honor.

THE COURT: You have some familiarity with legal
procedures as a result of your experience in the courts;
is that fair?

MR. SCROGGINS: Yes, sir.

THE COURT: And you have the assistance of Mr. Steve
Grogoza, a member of the court's bar, to help you with
this case.

MR. SCROGGINS: Yes, Your Honor.

THE COURT: All right. Is there anything else you want to
tell me about this decision?

MR. SCROGGINS: No, Sir.

THE COURT: All right. The State have any questions?

MR. SCUDERI: No, Judge.

THE COURT: All right. You may represent yourself as co-
counsel with Mr. Grogoza, subject to all the rules of the
court which we have discussed today and previously.

MR. SCROGGINS: Thank you.

Exh. 5 at 7-9.

Respondents argue that Petitioner waived his right to self-
representation and any _Faretta_-based claim; however, Respondents
rely on _Raulerson_, 732 F.2d 803, which is distinguishable from the
case *sub judice*. The Petitioner in _Raulerson_ argued that he was
denied the right to represent himself. Here, Petitioner argues in
Ground One that he was not fully advised of the disadvantages of
representing himself. The records *sub judice* clearly evidence that

Petitioner knowingly and voluntarily elected to represent himself with the assistance of his defense counsel sitting "second chair." While the trial court did not specifically advise Petitioner of <u>all</u> of the disadvantages to proceeding *pro se*, the trial court did explain certain disadvantages to Petitioner. The United States Constitution does not require any particular form of advice. <u>Iowa v. Tovar</u>, 541 U.S. 77 (2004). The trial court found Petitioner was familiar with court proceedings and had litigated many other cases *pro se*. Moreover, the trial court exercised its discretion and permitted Petitioner to have the assistance of his defense counsel, acting as "co-counsel." Petitioner did not object to having the assistance of "co-counsel." Based on the foregoing, the Court will deny Ground One because the state court's decision was neither contrary to, nor an unreasonable application of federal law, and was not an unreasonable determination of the facts in light of the evidence presented.

**Ground Two**

Petitioner argues that the trial court erred by denying him the opportunity to question the jurors individually during *voir dire* regarding the concepts of burden of proof, presumption of innocence, and reasonable doubt. Petition at 12. In Response, Respondents argue that this issue concerns only a matter of state law. Response at 17. Respondent also argues that Petitioner defaulted this ground because he did "not present the

constitutional dimension" before the jury was selected and then on appeal. Id. at 19. Instead, Respondents argue that counsel waited until after the jury had been selected through *voir dire* to object to the trial court's refusal to permit individual juror inquiry. Id. Turning to the merits of Petitioner's claim, Respondents note that the trial court "read section 2.03 of the Florida Standard Jury Instructions in Criminal Cases, defining and explaining reasonable doubt, the burden of proof, and the presumption of innocence." Respondents argue "[i]t is objectively reasonable to conclude that [the] trial court adequately covered the presumption of innocence and the burden of proof beyond a reasonable doubt by emphasizing the importance of these legal concepts, reading the jury instructions which define and explain these concepts, and asking the jury venire for an affirmative response regarding their understanding of, and willingness to follow, these concepts." Id. at 22.

As previously discussed Petitioner raised this claim on direct appeal. The appellate court *per curiam* affirmed the trial court. Thus, contrary to Respondents' argument, this claim appears exhausted. Nonetheless, the federal courts' authority in reviewing matters of *voir dire* in the state courts "is limited to enforcing the commands of the United States Constitution." Mu'Min v. Virginia, 500 U.S. 415, (1991)(citing Turner v. Murray, 476 U.S. 28 (1986); Ristaino v. Ross, 424 U.S. 589 (1976); Ham v. South

<u>Carolina</u>, 409 U.S. 524 (1983)). The United States Supreme Court has stated the following regarding *voir dire*:

> "[A] suitable inquiry is permissible in order to ascertain whether the juror has any bias, opinion, or prejudice that would affect or control the fair determination by him of the issues to be tried. The inquiry is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion. This is the rule in civil cases, and the same rule must be applied in criminal cases."

Mu'Min, 500 U.S. at 419 (quoting <u>Connors v. United States</u>, 158 U.S. 408, 413 (1895)). "A trial court's finding of impartiality may "be overturned only for 'manifest error.'" <u>Id.</u> at 428 (citing <u>Patton v. Yount</u>, 467 U.S. 1025, 1031 (1984)).

Upon review of the record, as noted by Respondents, the trial judge emphasized the importance of the legal concepts of reasonable doubt, burden of proof, and innocent until proven guilty, to the prospective jurors, as follows:

> I'm about to read you the law now preliminary to our further engaging in voir dire here. This is a definition of reasonable doubt and burden of proof and the effect of a plea of not guilty. I want you to listen carefully. You may have heard language similar to this if you've watched any dramatic presentations such as movies, TV programs or perhaps real trials that you may have experienced as a juror in some other jurisdiction. This is the law of the State of Florida, and this is the law that you would be required to, as jurors, follow in the decision of this case.
>
> The Defendant has entered a plea of not guilty. This means you must presume or believe the Defendant is innocent. The presumption of innocence stays with Defendant as to each material allegation in the information through each stage of the trial unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt.

> To overcome the Defendant's presumption of innocence, the
> State has the burden of proving the crime with which the
> Defendant is charged was committed and the Defendant is
> the person who committed the crime.
>
> The Defendant is not required to present evidence or
> prove anything. Whenever the words "reasonable doubt"
> are used, you must consider the following: That a
> reasonable doubt is not a mere possible doubt, a
> speculative imaginary or forced doubt. Such a doubt must
> not influence you to return a verdict of not guilty if
> you have an abiding conviction of guilt.
>
> On the other hand, if, after carefully considering,
> comparing and weighing all the evidence, there is not an
> abiding conviction of guilt; or if, after having a
> conviction, it is one which is not stable but one which
> wavers and vacillates, then the charge is not proved
> beyond every reasonable doubt and you must find the
> Defendant not guilty because the doubt is reasonable. It
> is to the evidence introduced in this trial and to it
> alone that you are to look for that proof.
>
> A reasonable doubt of the guilt of the Defendant may
> arise from the evidence, conflict in the evidence or the
> lack of evidence. If you have a reasonable doubt, you
> should find the Defendant not guilty. If you have no
> reasonable doubt, you should find the Defendant guilty.

Exh. 5 at 15-16. After reading the instruction, the trial judge

then asked the jury panel:

> Now, do any of you have any questions or concerns about
> any of that? Do all of you feel as though you understand
> that instruction on those important elements of our law?
> Anybody have any questions about it?
>
> Okay. Will all of you agree to abide and follow this
> law?

Exh. 5 at 16. The prospective jurors collectively responded in the

affirmative. Exh. 5 at 17.

As evidenced by the trial transcript, the Court finds that the

*voir dire* did not create any violation of Petitioner's fundamental

rights under the Due Process Clause of the Fourteenth Amendment. Petitioner has not shown a need for individual *voir dire* or any additional questioning as to these areas.  Based on the foregoing, the Court denies relief on Ground Two because the state court's decision was neither contrary to, nor an unreasonable application of federal law, and was not an unreasonable determination of the facts in light of the evidence presented.

**Ground Three**

Petitioner argues that the trial court erred by forcing the him to wear a stun belt during trial without first holding a hearing.  Petition at 17.  Petitioner states he "felt he had no choice but to accept placement of the stun belt upon his person." Id. at 18.  Petitioner argues that his "escape occurred at the county jail and he . . . never disrupted any courtroom whatsoever." Id.  Petitioner further contends that "during the trial . . . [he] could not adequately concentrate fully [sic] on the proceedings at hand.  All he could think about was the fear that, any second he would receive a shock from the stun belt."  Id.

In Response, Respondents first argue that this issue concerns only state law.  Response at 23.  Respondents also argue that Petitioner waived this claim as he did not object during trial to the use of the stun belt.  Id.  Respondents further argue that this claim is now procedurally defaulted because Petitioner did not raise this claim of trial court error on direct appeal.  Id.

(citing <u>Wainwright v. State</u>, 896 So. 2d 695, 704 (Fla. 2004)(habeas petitioner's claims court erred by failing to make specific findings before requiring him to wear stun belt at trial and by failing to conduct a <u>Koon v. Dugger</u>, 619 So. 2d 246 (Fla. 1993), inquiry were procedurally barred, citing <u>Parker v. Dugger</u>, 550 So. 2d 459, 460 (Fla. 1989)(finding habeas corpus petitions are not to be used for additional appeals on questions which could have been, should have been, or were raised on appeal or in a rule 3.850 motion, or on matters that were not objected to at trial)). In Reply, Petitioner argues that he was not required to raise this issue on direct appeal because he raised this claim in his Rule 3.850 motion. Reply at 8. Petitioner argues that the state courts' decisions are not entitled to a presumption of correctness. <u>Id.</u> at 7.

As previously stated, if a petitioner fails to raise his federal habeas claims properly in the state court, the petitioner is barred from pursing the same claim in federal court absent an exception to overcome the procedural bar, including a showing of cause for and actual prejudice from the procedural default. <u>Supra</u> at 10-13; <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302 (11th Cir. 1999). Generally, a procedural default can occur in two ways. First, the federal court is required to respect the state court's decision where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the claim is procedurally defaulted. <u>Id.</u> Second, "if the petitioner simply

never raised the claim in state court, and its obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court." Id. at 1303 (internal citations omitted). If claims were presented to the state court, then the Court asks "whether the last state court rendering judgment clearly and expressly stated that its judgment rested on a procedural bar, i.e., an adequate and independent state ground." Id. (citing Harris v. Reed, 489 U.S. 255, 263 (1989)). If the claims were not presented to the state court, and the second instance applies, then the Court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Id.

Upon review of the record, the Court finds that Petitioner's claim of trial court error was not raised on direct appeal, and, as such, is now procedurally barred. The Court must, therefore, determine whether it would now be futile for Petitioner to now attempt to exhaust his state remedies under the State's procedural default doctrine. The Court finds that a future attempt to exhaust this claim of trial court error would be procedurally barred. Specifically, according to Florida law, claims of trial court error should be raised on direct appeal. See Pooler v. State, 980 So.2d 460, 470-71 (Fla. 2008)(citing Rodriquez v. State, 919 So.2d 1252, 1262 n. 7, 1280 (Fla. 2006)); Cherry v. State, 659 So.2d 1069, 1072 (Fla. 1995)(noting that claims which could have been raised on

direct appeal are procedurally barred in a postconviction proceeding); Sampson v. State, 845 So.2d 271, 272 (Fla. 2d DCA 2003)(noting that claims of trial court error are foreclosed from collateral review because they could have and should have been raised on direct appeal). Further, Petitioner does not make the requisite showing of either cause and resultant prejudice, or a fundamental miscarriage of justice, to overcome the procedural default. Thus, the Court finds Ground Three of the Petition is procedurally defaulted.[6]

**Ground Four**

Petitioner argues that his "co-counsel" was ineffective for failing to object to the trial court's failure to hold an evidentiary hearing before requiring Petitioner to wear a stun belt

---

[6]Alternatively, even if the Court were to address the merits of this claim, Petitioner would be denied relief. "Clearly established federal law is not the case law of the lower federal courts, including this Court. Instead, in the habeas context, clearly established federal law 'refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision.'" Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001)(citing Williams v. Taylor, 529 U.S. at 412). See also Diaz v. Sec'y Dep't of Corr., 402 F.3d 1136, 1146 (11th Cir. 2005). The Florida courts did not unreasonably apply, or decide contrary to, clearly established federal law when they held that a stun belt was necessary because Scroggins posed a security risk. Using the stun belt furthered an "essential state policy" of lessening the real threat that Scroggins would make an escape attempt. Estelle v. Williams, 425 U.S. 501, 505 (1976). "The use of restraints is within the sound discretion of the trial court." Weaver v. State, 894 So. 2d 178 (Fla. 2004)(citing Elledge v. State, 408 So. 2d 1021, 1023 (Fla. 1981)). Concerns about a stun belt's potential to prejudice or chill a defendant's advocacy are less compelling when the belt's use is justified on grounds of preventing violence or escape, such as the case here.

at trial.  Petition at 21.  Petitioner states that defense counsel "participated in a _much_ greater capacity at Petitioner's trial than the role of standby counsel."  Id. (emphasis added).  Petitioner argues that "co-counsel had a duty to object to preserve the error for appellate review."  Id. at 23.

In Response, Respondent notes that the postconviction court denied Petitioner relief on this ground "because Scroggins had moved for and was allowed to represent himself at trial with the assistance of counsel and could not attack counsel having represented himself."  Response at 26.  As such, Respondent asserts that this ground is necessarily barred under State law as a procedural matter.  Id. at 27.  Alternatively, Respondents turn to the merits of Petitioner's claim, arguing that Petitioner does not satisfy either element of Strickland.  Respondent first argues that Petitioner cannot prove that no other reasonably competent attorney would have requested that the trial court hold a hearing on the use of a stun belt in light of Scroggins' escape  and "admitted loathing of service of his lengthy burglary sentence."  Id. at 29.  In Reply, Petitioner contends that the trial court's "one sentence denial is not entitled to a presumption of correctness . . . . ."  Reply at 9.  Petitioner submits an affidavit from his "co-counsel," stating that Petitioner was "forced by the court to wear a stun belt during the entire trial."  Pet. Exh. A.

As previously mentioned, Petitioner raised this claim of ineffective assistance in his first Rule 3.850 motion.  The

postconviction court summarily denied Petitioner relief on this claim, noting that the "Defendant moved for and was allowed to represent himself at trial, with the assistance of counsel . . . . A defendant who represents himself cannot subsequently file a Rule. 3.850 motion claiming that counsel was ineffective." Exh. 14. The appellate court *per curiam* affirmed the postconviction court's decision. Exh. 17.

Here, Petitioner invoked his right to represent himself, thereby proceeding *pro se* in his state criminal trial with the assistance of "co-counsel." The Court cannot find any federal constitutional mandate that a defendant electing to proceed *pro se* is also entitled to the effective assistance of a defense attorney acting as "co-counsel." On the contrary, this sort of "hybrid" representation is not required. See <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 183 (1984)(finding that standby counsel's conduct did not deprive a petitioner of his right to present his own defense); <u>Cross</u>, 893 F.2d at 1291-92 (11th Cir. 1990). "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." <u>Faretta</u>, 422 U.S. at 835. "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" <u>Id.</u> at 834, fn. 46. When a defendant waives his right to the assistance of counsel, the defendant waives his right to a

Strickland claim.  See Wainwright v. Torna, 455 U.S. 586, 587-88 (1982)(holding no deprivation of effective assistance of counsel was possible when there was no constitutional right to counsel).

Nonetheless, assuming *arguendo* that the Strickland standard applies to stand-by counsel, Petitioner satisfies neither prong of Strickland.  Petitioner was on trial for escape.  Petitioner's criminal history was sufficient to qualify as a violent career criminal.  Thus, Petitioner cannot show that an objection to the use of the stun belt would have been successful in light of the legitimate security concerns posed by Petitioner.  The Court will deny Petitioner relief on Ground Four because the state court's decision was neither contrary to, nor an unreasonable application of federal law, and was not an unreasonable determination of the facts in light of the evidence presented.

**Ground Five**

Petitioner argues that defense counsel was ineffective during pretrial representation for failing to identify and present a defense based upon insanity[7] and for misadvising Petitioner that insanity was not a valid defense to the charge of escape.  Petition at 25.

In Response, Respondents argue, similarly to above, that this claim is foreclosed since Petitioner elected to represent himself

---

[7]It is clear from the record that Petitioner's reference to "insanity" is actually referring to diminished mental capacity and not literally insanity.

in this case. Response at 30-31. Respondents further argue that Petitioner's claim was waived, abandoned, and procedurally barred as evidenced by the record when defense counsel, after consulting with Petitioner, abandoned any affirmative defenses to the charge. Id. at 31. Turning to the merits of the claim, Respondents argue that Petitioner fails to satisfy either prong of Strickland. See generally Id. Respondents further argue that at the time of the trial, diminished capacity[8] was not recognized as a permissible defense for this charge. Id. at 34 (citing Hodges v. State, 885 So. 2d 338, 352 (Fla. 2004)(noting that on "numerous occasions . . . evidence of an abnormal mental condition not constituting legal insanity is inadmissible to negate specific intent.").

As discussed above, Petitioner invoked his right to represent himself, thereby proceeding *pro se* in his state criminal trial with the assistance of "co-counsel." Supra, pp. 34-35. The charge Petitioner faced, escape, is a specific intent crime. See Helton v. State, 311 So. 2d 381, 384 (Fla. 1st DCA 1975)(stating that the elements of escape are: "The physical act of leaving, or not being in, custody coupled with the intent to avoid lawful confinement."). See also Spencer v. State, 842 So. 2d 52, 63 (Fla. 2003)(holding evidence of defendant's disassociative state would not have been admissible during the guilt phase). As Respondents note, under

---

[8]Although Petitioner uses the term "insanity," Respondents note that the proper terminology in the State is "diminished capacity." Respone at 34.

Florida law, diminished capacity is not recognized as a permissible defense to a specific intent crime. <u>Hodges v. State</u>, 885 So. 2d 338, 352 (Fla. 2004). Petitioner cannot prove that his defense would have been meritorious had the defense of diminished capacity been raised. <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375, 382 (1986). Thus, Petitioner cannot satisfy the <u>Strickland</u> requirements because an attorney cannot be deemed ineffective for failing to file a futile or meritless motion. <u>Ladd v. Jones</u>, 864 F.2d 108, 109-10 (11th Cir. 1989); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992). The Court denies Petitioner relief on Ground Five because the state court's decision was neither contrary to, nor an unreasonable application of federal law, and was not an unreasonable determination of the facts in light of the evidence presented.

**Ground Six**

Petitioner argues that the trial court erred by sentencing him as a violent career criminal without making the required mandatory statutory findings and for enhancing his sentence beyond the statutory maximum for prior burglaries that are not by statutory definition crimes of violence. Petition at 30. Petitioner states in his first Fla. R. Crim. P. 3.800(a) motion, he requested that the trial court apply lenity to the burglary of unoccupied structures and find that he did not have the requisite prior felony convictions to support the sentence. <u>Id.</u> at 31. In his second Rule 3.800(a), Petitioner states that he argued that the trial

court judge's decision to take judicial notice of Petitioner's prior crimes was improper and violated Petitioner's due process rights.  <u>Id.</u>

In Response, Respondents argue that this ground does not present a federal question, as this issue concerns matters solely within the province of the Florida courts.  Response at 34-35.  In other words, Respondents contend that this claim raises nothing more than a state law sentencing issue.  <u>Id.</u> at 38.  Even when a claim is couched in terms of equal protection and due process, Respondents argue that the federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures.  <u>Id.</u> at 35 (citations omitted).  Respondents assert that the appellate court's order affirming the trial court's order of denial of Petitioner's first Rule 3.800(a) motion settles, that as a matter of Florida law, burglary qualified as a predicate offense.  <u>Id.</u> at 35.  Moreover, Respondents argue that Petitioner did not raise any constitutional dimension, if any, at sentencing and then on direct appeal.  <u>Id.</u>  Thus, Respondents argue that this claim is unexhausted and is now procedurally defaulted.  <u>Id.</u>

Petitioner filed his first Rule 3.800(a) motion arguing that the trial court erred in sentencing him because he lacked the requisite prior felony convictions.  In denying his motion, the trial court ruled:

> The Defendant claims this Court could not legally
> consider the Defendant's prior conviction of burglary of
> an unoccupied structure in order to classify the

> Defendant as a violent career criminal under section
> 775.084(1)(d). The Defendant claims that burglary of an
> unoccupied structure does not qualify as a forcible
> felony. However, as pointed out by the State in its
> response, the Fourth District Court of Appeal recently
> held that the crime of burglary, including that of an
> unoccupied conveyance, is a predicate offense under the
> violent career criminal sentencing statute. <u>Bynes v.
> State</u>, 845 So. 2d 189 (Fla. 4th DCA 2003). <u>See also
> Rodriquez v. State</u>, 826 So. 2d 464 (Fla. 3d DCA 2002).

Exh. 26. The appellate court *per curiam* affirmed the trial court's

decision. Exh. 27.

Petitioner then filed a second Rule 3.800(a) motion pertaining

to the procedures by which the trial court sentenced him. In

particular, Petitioner argued that the trial court erred by taking

judicial notice of his prior convictions. In denying Petitioner's

second Rule 3.800(a) motion, the trial court held:

> This cause comes before the Court on Defendant's *pro se*
> "Motion to Correct Sentence," filed on April 5, 2005,
> pursuant to Fla. R. Crim. P. 3.800(a). Having reviewed
> the motion, the case file and the applicable law, and
> upon due consideration, the Court finds as follows:
>
> 1. Defendant was sentenced on April 28, 2000, to thirty
> (30) years as a violent career criminal. In his motion,
> Defendant asserts that he "is entitled to be resentenced
> because judicial notice taken of prior proceedings is
> insufficient evidence to support a sentence under §
> 775.084(1)(c)(99)."
>
> 2. Defendant cites a couple of cases addressing the
> requirement that the State present the proper proof prior
> to the trial court sentencing the defendant as a habitual
> offender. <u>See Lloyd v. State</u>, 844 So. 2d 713 (Fla. 2d DCA
> 2003); <u>Sanders V. State</u>, 765 So. 2d 161 (Fla. 2d DCA
> 2000). However, all of the cases Defendant cited are
> procedurally distinct from the case at bar because those
> cases were appeals. None of the cases addressed whether
> a sentence is illegal for purposes of Rule 3.800(a) if

the court sentences a defendant without the necessary proof.

> 3. Rule 3.800(a) "is concerned primarily with whether the terms and conditions of the punishment for a particular offense are permissible as a matter of law. It is not a vehicle designed to re-examine whether the procedure employed to impose the punishment comported with statutory law and due process." _Judge v. State_, 596 So. 2d 73, 77 (Fla. 2d DCA 1992). The court in _Judge_ used as an example of a sentence, which may be correctable on appeal but which was not illegal for purposes of Rule 3.800(a), "[a] sentence imposing adult sanctions on a juvenile in the absence of specific findings" as required by statute. _Id._ Thus for purposes of Rule 3.800(a), an improper violent career criminal sentence is illegal only if the sentence exceeds those authorized under Fla. Stat. 775.084 or the prior offenses essential to categorizing defendant as a violent career criminal do not actually exist. _See_ _Bover v. State_, 797 So. 2d 1246, 1249 (Fla. 2001)(quoting _Judge_, 596 So. 2d 73).

> 4. Defendant neither alleges that his sentence exceeds those authorized by Fla. Stat. § 775.084 nor that a prior offense for which he was declared a violent career criminal does not exist. He seeks a re-examination of the procedures used to sentence him. Therefore, Defendant has failed to demonstrate that his sentence is illegal for purposes of rule 3.800(a).

Exh. 36. The appellate court _per curiam_ affirmed the trial court's decision.

After the jury returned a guilty verdict, the trial judge asked the parties if there was a reason why sentencing should not occur that day. Exh. 5 at 138. The parties did not object. _Id._ The prosecutor requested that the trial judge take judicial notice of Petitioner's three prior judgments and sentences of burglary, which qualified Petitioner as a violent career criminal. _Id._ The defense did not object, but instead argued that if the court found that Petitioner was not a threat to the community, then the minimum

mandatory thirty-year sentence did not have to be imposed.  Id. at 139.  The Court found based on Petitioner's record that he should be sentenced as a violent career criminal and imposed a sentence of thirty years.  Id. at 140

The Court agrees with the Respondents' argument and finds that this claim involves matters of only state law: whether the State allegedly violated its own sentencing procedures.  The court cannot conduct an examination of an issue concerning state law.  See Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988); see also Robinson v. Sec'y Dep't of Corr., Slip Copy, 2008 WL 508211 (M.D. Fla. Feb. 21, 2008).  Specifically, the courts have consistently held that "[i]n the area of state sentencing guidelines . . . [a] federal court can not [sic] review a state's alleged failure to adhere to its own sentencing procedures."  Id. (other citations omitted).  Petitioner cites to no federal law supporting his argument that his federal rights were violated when the trial court took judicial notice of his prior criminal convictions and judgments.  Thus, the Court will deny Petitioner relief on Ground Six because the state court's decision was neither contrary to, nor an unreasonable application of federal law, and was not an unreasonable determination of the facts in light of the evidence presented.

ACCORDINGLY, it is hereby

**ORDERED:**

1.  Petitioner's Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED**.  Ground Three is **DISMISSED** with prejudice as procedurally barred.  The remaining grounds are **DENIED** on the merits with prejudice.

2.  The Clerk of Court shall: (1) terminate any pending motions; (2) enter judgment accordingly; and (3) close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this __12th__ day of March, 2009.

JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record